UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. VINCENT CATHOLIC CHARITIES,

        Plaintiff,

v.

INGHAM COUNTY BOARD OF
COMMISSIONERS,

        Defendant.

_____

Civil No. 1:19-CV-1050

Hon. Robert J. Jonker

Lori H. Windham
Mark L. Rienzi
Nicholas R. Reaves
William J. Haun
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave NW, Ste 400
Washington, DC 20006
lwindham@becketlaw.org
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

William R. Bloomfield (P68515)
Catholic Diocese of Lansing
228 N. Walnut Street
Lansing, Michigan 48933-1122
(517) 342-2522
wbloomfield@dioceseoflansing.org
*Attorneys for Plaintiff*

Bonnie G. Toskey (P30601)
Sarah K. Osburn (P55539)
Cohl, Stoker & Toskey, P.C.
601 N. Capitol Avenue
Lansing, Michigan 48933
(517) 372-9000
btoskey@cstmlaw.com
sosburn@cstmlaw.com
*Attorneys for Defendant*

**DEFENDANT'S BRIEF**

**ON PLAINTIFF'S PROPOSED RELIEF**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ....................................................................................................... ii

RESPONSE TO SVCC'S "INTRODUCTION" ........................................................................1

KEY FACTS ...............................................................................................................................2

Issue I:  SVCC's claims for monetary damages improperly claim damages for dismissed claims or claims never made, and are otherwise hugely inflated and insupportable ................................................................................................................................2

    1.  Damages for "diverted staff time" .............................................................................2
    2.  Damages for expenses incurred in mitigating reputational injury ...............................3
    3.  The claim for $4,500 as a Community Agency Grant ..................................................5
    4.  Reputational damages ................................................................................................5

Issue II:  SVCC's requests for declaratory relief fail to satisfy the *Grand Trunk W. R. Co. v. Consolidated Rail Corp.* test SVCC itself claims controls ..............................................9

Issue III:  Permanent injunctive relief would be singularly inappropriate ..............................13

RELIEF REQUESTED ................................................................................................................20

CERTIFICATE OF COMPLIANCE ..........................................................................................22

# TABLE OF AUTHORITIES

**Federal Supreme Court Cases:**

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251; 66 S.Ct. 574; 90 L.Ed. 652 (1946) ...................... 6

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ........................................................ 8

*Bond v. Floyd*, 385 U.S. 116; 87 S.Ct. 339; 17 L.Ed.2d 235 (1966) ............................................ 13

*Bounds v. Smith*, 430 U.S. 817 (1977) ...................................................................................... 20

*Carey v. Piphus*, 435 U.S. 247; 98 S.Ct. 1042; 55 L.Ed.2d 252 (1978) .................................... 3, 5

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................................... 14

*Grace v. Ctr. for Auto Safety*, 72 F.3d 1236 (6th Cir. 1996) ....................................................... 20

*Int'l Longshoreman's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64 (1967) ........ 20

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299; 106 S.Ct. 2537; 91 L.Ed.2d 249
   (1986) ................................................................................................................................... 3, 14

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408; 155 L.Ed.2d
   585 (2003) ............................................................................................................................... 8

*United States v. O'Brien*, 391 U.S. 367 (1968) ........................................................................... 18

*Young v. United States*, 481 U.S. 787 (1987) ............................................................................. 20


**Federal Sixth Circuit Court Cases:**

*Cotton v. Mansour*, 863 F.2d 1241 (6th Cir. 1988) ..................................................................... 15

*Déjà Vu of Nashville v. Nashville*, 274 F.3d 377 (6th Cir. 2001) ........................................... 18-19

*Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795 (6th Cir. 2017) ...................................... 19

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) .............. 9

*Harris v. Richards Mfg. Co., Inc.*, 675 F.2d 811 (6th Cir. 1982) .................................................. 7

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) .................................................... 17

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022) ........................................................................ 21

*NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585 (6th Cir. 1987)....................................19

*Parate v. Isibor*, 868 F.2d 821 (6th Cir. 1989) ....................................17

*Pfahler v. National Latex Products Co*., 517 F.3d 816 (6th Cir. 2007)....................................6

*Schock v. Redman*, 924 F.2d 1059 (6th Cir. 1991) ....................................8

*Simon v. City of Youngstown*, 73 F.3d 68 (6th Cir. 1996) ....................................6

*Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006) ....................................15

*Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994) ....................................13


**Federal Other Circuit Court Cases:**

*Kemmerer v. ICI Americas Inc*., 70 F.3d 281 (3d Cir.1995) ....................................6

*Lancaster v. Rodriguez*, 701 F.2d 864 (10th Cir.) ....................................9


**Federal District Court Cases:**

*Buck v. Gordon* (W.D. Mich. No. 1:19-cv-286) ....................................15

*Pucci v. Somers*, 834 F. Supp. 2d 690 (E.D. Mich. 2011) ....................................3-4


**U.S. Constitution:**

U.S. Const., Art. IV, cl. 4....................................21


**Federal Statutes:**

42 U.S.C. §1983....................................4, 14

42 U.S.C. §1988....................................4


**Federal Court Rules:**

Fed. R. Civ. P. 12(b)(6)....................................3-4

Fed. R. Civ. P. 60(b) ....................................18-20

L.Civ.R. 7.2(b)(i) .................................................................................................................22

**RESPONSE TO SVCC'S "INTRODUCTION"**

Defendant begins by accepting, for present purposes, that the Court has adjudged the Ingham County Board of Commissioners (hereinafter referred to as "ICBC") culpable of targeting St. Vincent Catholic Charities (hereinafter "SVCC") based on its religious practices and beliefs, in violation of the First Amendment (ECF No. 74, PageID.2103) with respect to its 2020 Community Agency Grant application for funding to present "Living in America" classes featuring "home purchasing/home maintenance", "small business development", "academic English for speakers of other languages", and "computer literacy". The issue to be addressed herein concerns the appropriate remedies.

SVCC begins by throwing out dollar figures, none of which is documented. The dollar amounts are followed by SVCC arguing for both declaratory and permanent injunctive relief, without considering the facts on which this Court focused its attention, and without any acknowledgment that much of what SVCC seeks by way of remedies involves its summarily dismissed claims regarding refugee services contracts, and without considering this Court's previous ruling on injunctive relief. A more dispassionate, objective review of these important considerations is needed.

**KEY FACTS**

In granting summary judgment to SVCC, this Court focused extensively on Commissioner Morgan's perceived[1] animus against SVCC and what it regarded as a false explanation by Commissioner Morgan for the decision not to fund SVCC's 2020 Community Grant Application for $4,000.00 (ECF No. 74, PageID.2083, 2086-2087, 2094). Commissioner Morgan was not re-elected to the term beginning January 1, 2021, and therefore is no longer a member of the ICBC, so his ascribed hostility towards SVCC is not a factor in ICBC current dealings with SVCC.

Three other Commissioners—Tennis, Sebolt, and Stivers—each on one or two occasions made remarks critical of SVCC. None of the remaining 11 Commissioners, nor Morgan's successor, has ever been shown to have expressed hostility towards SVCC.

**Issue I: SVCC's claims for monetary damages improperly claim damages for dismissed claims or claims never made, and are otherwise hugely inflated and insupportable.**

**1. Damages for "diverted staff time"**

In positing its monetary damages, SVCC claims it lost $1,263.28 in diverted staff time (ECF No. 75, PageID.2116). But SVCC provides no time records, whether contemporaneous or reconstructed, to substantiate this figure, and no insight into the method of calculation. Yes, the amount of money is not substantial—but Defendant is a steward of public funds and cannot simply ignore the lack of documentation supporting demands on its treasury merely because the number of dollars involved is small. SVCC by its own admission made no effort to separate compensable damages from rejected claims—on p. 7 of its Brief (ECF No. 75, PageID.2115), SVCC says that its Director's time was diverted from her principal mission "to spend time

---

[1] The record reflects that even Morgan was not an implacable foe of SVCC—during the critical November 4, 2019 Human Services Committee Meeting Morgan expressed nothing critical about SVCC (ECF No. 17-11, PageID.353-359), and Morgan voted *against* limiting the 2020 Refugee Services Contract with SVCC to six months (*id.*, PageID.359).

responding to the ICBC's unprecedented Request for Proposal ("RFP"), implemented with 'absolutely the intent' of finding an alternative to St. Vincent for the refugee interpretive services contract * * *"[2]. But all claims regarding the refugee interpretive services contract were dismissed under Fed. R. Civ. P. 12(b)(6) on September 18, 2020 (ECF No. 36, PageID.949). SVCC is clearly not entitled to "damages" relating to any claim that was dismissed on its merits.

Since SVCC identifies no time of its Director or other staff specifically "diverted" because of denial of its 2020 Community Grant Application for $4,000.00, the entirety of the $1,263.28 must be disallowed.

### 2. Damages for expenses incurred in mitigating reputational injury

The ICBC concedes that "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation * * *." *Pucci v. Somers*, 834 F. Supp. 2d 690 (E.D. Mich. 2011), citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307; 106 S.Ct. 2537; 91 L.Ed.2d 249 (1986), in turn citing *Carey v. Piphus*, 435 U.S. 247, 254; 98 S.Ct. 1042; 55 L.Ed.2d 252 (1978).

SVCC represents that it hired the public relations firm Truscott Rossman Group, LLC to repair "reputational harm," and attaches a purported invoice (ECF No. 75-2), claiming it was

---

[2] This dovetails with Ms. Steyka's declaration (ECF No. 75-1, PageID.2143, ¶9) that 24 hours of staff time were needed "to respond to the Board's actions" and

> None of this time is related to St. Vincent's litigation over the grant denial. Instead, this time was spent responding to the Board's disparaging statements, reassuring our community partners and donors, and applying for an unprecedented Request for Proposal on the interpretive services contract that we have held with the County for years. Combining the total staff time, St. Vincent spent $1,263.28 on diverted staff time, based on the salary and benefits paid to each employee.

So <u>none</u> of the claimed $1,263.28 relates to the 2020 Community Grant Application; all of that "diverted staff time" thus connects to "the interpretive services contract" claim that was dismissed.

billed $5,040.  But the "invoice" contains no dollar figure(s) whatsoever; it merely reflects that, from Nov. 1-14, 2019, Truscott Rossman provided 21 billable hours of service to SVCC, of which May Blumer accounted for .50 hours, Barbara Holland 8.25 hours, Wendy Lerner 1.25 hours, John Truscott 5.25 hours, and Sara Wurfel 5.75 hours.  No hourly rates are shown, although presumably Mr. Truscott, as firm principal, would charge the highest hourly rate.  The nature of the services provided by Mses. Blumer, Holland and Lerner cannot be evaluated because they no longer work for Truscott Rossman and so their qualifications and skills are not included on the firm's website (https://www.truscottrossman.com/about/#our-team).

Meanwhile, a review of the Truscott Rossman statement shows that the services for which SVCC seeks reimbursement again involve claims that were dismissed on the merits under Rule 12(b)(6)—SVCC's 2020 Community Agency Grant Application first came before Defendant's Human Services Committee on November 18, 2019 (as SVCC itself alleged in its Complaint, ECF No. 1, PageID.21).  Every public relations service provided by Truscott Rossman prior to November 18, 2019, therefore cannot conceivably relate to the claim on which SVCC has prevailed[3]. As recognized in *Pucci v. Somers,* 834 F. Supp. 2d at 701[4]:

> Work on an unsuccessful claim cannot be considered to have been "expended in pursuit of the ultimate result achieved" where the plaintiff has presented distinctly different claims for relief based on different facts and legal theories. But where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

---

[3] While admittedly 4 Commissioners were found to have made statements hostile to SVCC before November 18, 2019, SVCC did not sue anyone—neither Defendant Board nor any individual Commissioners—for defamation.  So, even if offending statements prior to November 18, 2019, were actionable, SVCC did not sue on that basis, and it cannot pretend it did so by now claiming damages for defamation.

[4] This quotation was originally addressing attorney fees under 42 U.S.C. §1988, but the same principle logically applies to damages under 42 U.S.C. §1983.

According to SVCC's own exhibit, Ms. Holland devoted .25 hours of time post-November 17, 2019, to serving SVCC and Mr. Truscott also .25 hours. No other public relations services could therefore be reasonably attributed Defendant's 2020 Community Agency Grant-related wrongdoing. With no other means of monetizing that total of .50 hours of public relations services than dividing the claimed $5,040 total charges by 21 hours for a blended hourly rate of $240, SVCC's damages are arithmetically demonstrated to be not more than $120.00.

### 3.     The claim for $4,500 as a Community Agency Grant

SVCC claims it is "entitled" to the "lost" $4,500 2020 Community Agency Grant. Yes, and No. IF SVCC is prepared to use such funds for a series of "Living in America" classes corresponding to all the parameters in its rejected Community Grant Application, then the ICBC will provide that amount for that purpose. But if SVCC claims a right to $4,500 to spend as it pleases, then that would represent a misapplication of publicly appropriated funds which this Court has no reason or justification for ordering.

SVCC has not proposed to restrict its use of such funds, so its claim must be rejected.

### 4.     Reputational damages

At the outset, granting that reputational damages are compensable per *Carey v. Piphus, supra*, given that SVCC hired the highest rated public relations firm in the area more than two weeks *before* its First Amendment rights were violated, and in light of the fact that, on and after November 18, 2019, Truscott Rossman devoted only .50 hours to repairing any resulting damage to SVCC's reputation[5], not only was such damage, if any, slight, but <u>Truscott Rossman must</u>

---

[5] Per the Truscott Rossman "invoice", that ½ hour was spent merely observing the Board's November 21, 2019, meeting ("Strategic Planning & Counsel - Ingham County Board meeting monitoring"), which must have satisfied Mr. Truscott that his further services were unnecessary.

have concluded it had completed its task of restoring SVCC's reputation by terminating its services after monitoring the Ingham County Board's November 21, 2019, meeting.

So, that raises a question of whether, beyond the $120 for Truscott Rossman monitoring charges, SVCC suffered *any* cognizable reputational damage from denial of its 2020 Community Services Grant Application. Clearly, the $50,000 figure posited by SVCC is a random number.

As a general proposition, "Damages cannot be speculative, but this only means that the fact of damages, not their amount, cannot be uncertain. *Kemmerer v. ICI Americas Inc*., 70 F.3d 281, 289-91 (3d Cir.1995)." *Pfahler v. National Latex Products Co*., 517 F.3d 816, 837 (6th Cir. 2007). Here, the fact of damages is indeed uncertain. As held in *Simon v. City of Youngstown*, 73 F.3d 68 (6th Cir. 1996):

> Although courts are granted discretion in their damage awards, damages still must be proved and speculative awards may not be given. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263-64, 66 S.Ct. 574, 579-80, 90 L.Ed. 652 (1946).

That this is so appears from SVCC's own Brief, where SVCC argues (ECF No. 75, PageID.2114):

> First, the Board's public disparagement of St. Vincent's religious disbeliefs [*sic*] compelled St. Vincent to hire a public relations firm. Seyka Decl. ¶ 5 (Attach. 1).

To like effect, Director Seyka hired Truscott Rossman speculatively:

> 6. I was personally concerned that the Board's allegations regarding St. Vincent's ministry would cause irreparable harm to that excellent reputation and threaten the agency's overall standing in the community. [ECF No. 75-1, PageID.2142]

By her own admission, Seyka was worried about reputational damage *before actionable wrongdoing occurred*, but her declaration is devoid of any indication of any actual damage. She identifies no previous donor who reduced or eliminated support for SVCC in a manner attributable to anything said or done by ICBC Commissioners on November 18 or 21, 2019, or even after the comments made regarding the Contracts, and likewise nowhere indicates that any

potential new donor opted not to contribute to SVCC's support, or provided support at a lower level, based on anything said or done by ICBC Commissioners. Although Seyka claims that the adverse comments were "well known in the Ingham County community" (ECF No. 75-1, PageID.2144, ¶11), she cannot link them to any actual harm to SVCC's reputation—no poll of Ingham County residents before and after the relevant events is proffered to show a diminishment of SVCC's stature in the public eye, nor does SVCC offer even anecdotal evidence of such a change in attitudes.

Moreover, according to the Truscott Rossman "invoice", that firm was retained not later than November 1, 2019, almost 3 weeks *before* the ICBC's First Amendment violation. After the ICBC's November 21, 2019, Meeting at which, per ECF No. 74, it denied SVCC's 2020 Community Agency Grant Application and thereby violated SVCC's First Amendment rights (for the one and only time), SVCC had no further need for Truscott Rossman's services, suggesting SVCC's reputation had by then (if ever it was reduced in public estimation) been restored to SVCC's satisfaction. Note that Ms. Seyka's Declaration identifies no actual economic damages connected to the 2020 Community Agency Grant denial (other than $120 for Truscott Rossman services).

Nor can the $50,000 demand be justified as punitive damages[6]. The key considerations for a punitive damages award are whether: the harm was physical rather than economic [no]; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others [no]; the conduct involved repeated actions or was an isolated incident [isolated incident]; and the harm resulted from intentional malice [yes, according to this Court's March 7, 2022,

---

[6] Importantly, SVCC has never requested punitive damages; in its Complaint, it demanded only "actual and nominal damages" (ECF No. 1, PageID.33, ¶d). Allowing punitive damages at this late date would violate ICBC's 7th Amendment right to jury trial. *Harris v. Richards Mfg. Co., Inc.*, 675 F.2d 811, 815 (6th Cir. 1982).

ruling, ECF No. 74], trickery [no], or deceit [no], or mere accident [questionable, where only 4 of 14 Commissioners expressed any animus towards SVCC]. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576-577 (1996). It is ordinarily presumed that an award of compensatory damages makes the plaintiff whole, so punitive damages are allowable only when "the defendant's culpability is so reprehensible to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.*, at 575.

Here, notwithstanding this Court's obvious displeasure with the animus towards SVCC as expressed by 4 Commissioners, 10 Commissioners expressed *nothing* to suggest a desire to harm SVCC based on its religious beliefs or practices, in a context where, just two weeks earlier, the full ICBC augmented state and federal monies with $70,537 (ECF No. 16-4, PageID.191, ¶3) in Ingham County funds in order to facilitate SVCC's Interpretive Services Contract, the ICBC's culpability, limited as it is to the 2020 Community Agency Grant request for another $4,500, hardly rises to a level of reprehensibility that would support an award of punitive damages in any amount.

Even if punitive damages were allowable, since $50,000 represents 416 2/3 times the amount of SVCC's compensatory damages of $120, such an award would be improper and unconstitutional. A valid punitive damages award should almost never exceed a single digit ratio. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425; 155 L.Ed.2d 585 (2003).

Here, SVCC should be awarded nothing for claimed "reputational damages", as there is no evidence anything of the sort was inflicted on SVCC. Unsubstantiated and unproven assertions cannot support a claim for compensatory and punitive damages. *Schock v. Redman*, 924 F.2d 1059 (6th Cir. 1991); see also *Lancaster v. Rodriguez*, 701 F.2d 864, 865-66 (10th

Cir.), ("[U]pon a proper showing, actual damages, if present, can be established in any constitutional violation case, and can be recovered. It is equally apparent that if a violation was established, but no showing of damages was made, the recovery is limited to nominal damages.").

**Issue II: SVCC's requests for declaratory relief fail to satisfy the *Grand Trunk W. R. Co. v. Consolidated Rail Corp.* test SVCC itself claims controls.**

SVCC argues that it has consistently advocated application of the test established in *Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 324, 325-326 (6th Cir. 1984), where the Court held:

> The sole issue on this appeal is whether we should exercise our discretion to review by declaratory judgment an order entered in the Circuit Court of Cook County, Illinois, adjudicating the merits of a claim for indemnification. Because we conclude the instant action is not an appropriate one for declaratory judgment, we vacate the District Court's order and dismiss the case.
>
> * * *
>
> We believe that the standard of review applicable to the District Court's discretion exercised under the Declaratory Judgment Act should not be as narrow as the *Globe* and *Delno* cases suggest. We must be able to ensure that the District Court exercises its discretion to grant declaratory relief when the need for uniformity or another overriding policy consideration suggests the need for settlement or clarification of the legal issues presented. But we should not be required to decide legal issues and give advisory relief unnecessarily. See *Sears, Roebuck and Co. v. American Mut. Liab. Ins. Co.*, 372 F.2d 435, 438 (7th Cir.1967). Thus if we disagree with the District Court's reasons for rendering a declaratory judgment, as we do in this case, we should decline to advise the parties as to the law and refuse to decide the issues presented.
>
> We apply the following general principles in determining whether a declaratory ruling is appropriate:
>
> > The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941), cited with approval in *Broadview Chemical Corp. v. Loctite Corp., supra, Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co*., 177 F.2d 942, 944 (6th Cir.1949); *Maryland Cas. Co. v. Boyle Constr. Co*., 123 F.2d 558, 565 (4th Cir.1941). See also Wright, Miller & Kane, *supra*, at 647 n. 5. We thus consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. See generally Moore, *supra*, p 57.08-. See also Wright, Miller & Kane, *supra*, Sec. 2759. Applying each of these factors to the instant case, we conclude the District Court erred in granting declaratory relief.

Here, this Court's Summary Judgment Ruling (EC No. 74, PageID.2089-2103) leaves no one—certainly not either SVCC or the Defendant ICBC—uncertain as to where the constitutional boundaries lie and what adverse consequences follow when those limits are exceeded. The concomitant award of compensatory damages (Issue I above) buttresses the resulting clarity as to the governing First Amendment principles and the consequences of violating or ignoring them.

SVCC is unable to identify any "legal relations" that require clarification. In effect, SVCC asks this Court to declare (ECF No. 75, PageID.17-18) that which this Court already made manifest in its March 7, 2022, Summary Judgment Ruling, *viz.*, that: (1) the First Amendment prohibits religious discrimination (ECF No. 74, PageID.2090), and (2) retaliation for the exercise of rights protected by the the First Amendment is equally prohibited (ECF No. 74, PageID.2090-2091).

Applying the 5-part *Grand Trunk* test:

(1) The controversy is already settled—ICBC did nothing actionable in relation to the Refugee Services Contract (ECF No. 36, PageID.944-945), but violated SVCC's rights in relation to its denial of the 2020 Community Agency Grant Application (ECF No. 74,

PageID.2091-2101)—so a declaratory ruling would contribute nothing to resolution of the dispute. Indeed, SVCC itself acknowledges that this Court has already recognized that the ICBC "has learned" a lesson (ECF No. 75, PageID.2126, citing ECF No. 74, PageID.2102). SVCC identifies no reason for believing that "the lesson" will be soon forgotten or is otherwise at jeopardy.

(2) The Summary Judgment Ruling having—in combination with the Court's previous substantive ruling (ECF No. 36, PageID.944-945) *in favor of ICBC on claims relating to the Refugee Services Contract*—fully and unequivocally determined the legal relations in issue, so a declaratory ruling would, again, be superfluous. And a declaratory ruling addressing only one part of the controversy would be grossly unfair and misleading, particularly inasmuch as SVCC filed suit on December 13, 2019, claiming that the Refugee Services and Interpreter Contracts were in jeopardy [ECF No. 1, PageID.12 (¶¶32, 34), 16-19 (¶¶41-45), 24 (¶59), 25 (¶¶60-61), 28 (¶¶71-72), 30 (¶81), 31 (¶87), 33 (¶¶a, b)], and sought a preliminary injunction on the same basis (ECF No. 5, PageID.54-55) when, over a month earlier, *without dispute*, the Refugee Services and Interpreter Contracts had been renewed for a full year on November 12, 2019, *before* suit was initiated (ECF No. 36, PageID.942-943; ECF No. 30, PageID.777-778).

(3) A declaratory ruling would function as "procedural fencing", in the sense that Defendant ICBC consists of 14 elected members, one of whom (Morgan) was most frequently mentioned adversely in this Court's March 7, 2022, Summary Judgment Ruling, but has not been a member of the ICBC since January 1, 2021 (and other 2019 Commissioners have been replaced as well). In the normal course of events the other 13 Commissioners (only 3 of whom were ever alleged to have expressed any critical views about SVCC) will similarly be rotated out and replaced by "untainted" electees. But SVCC wants to prejudge all actions by any of the 10

"untainted" or other future new Commissioners who might someday vote against contracting with or awarding grants to SVCC by utilizing a declaratory judgment as a cudgel to browbeat such future County Boards into automatons always awarding SVCC with exactly what it wants or be dragged into court under the threat that they are already tarred with a reputation for religious bigotry and a penchant for retaliation. This will leave future ICBC hopelessly behind the 8-ball in defending themselves against whatever allegations SVCC may care to present. In effect, SVCC wants to control the County legislature's discretion in the spending of taxpayer dollars, to the prejudice of all other citizens, residents, and political interests that may wish to promote agendas and policies with which SVCC may disagree. Ameliorating a one-time breach[7] of First Amendment rights by granting SVCC the right to dictate the direction of the ICBC while correlatively emasculating the political power of the County's electors (who all have First Amendment rights of their own). This is a proposed cure far worse than the "disease".

(4) Declaratory relief would have no effect on federal-state court relations.

(5) There are clearly multiple alternative remedies that would be more effective:

a. A declaratory judgment in favor of SVCC as to the denial of the 2020 Community Agency Grant Application, combined with a declaratory judgment in favor of ICBC regarding its right to be free of harassment and litigation if it utilizes alternative providers for refugee or other services by exploring options that may be presented by other providers, and also recognizing the

---

[7] SVCC clearly contends that each and every expression of adverse sentiment towards it by any Commissioner represents a First Amendment violation. But this Court dismissed all claims, including those involving actions by ICBC Committees, other than those concerning the single 2020 Community Agency Grant Application (ECF No. 36, PageID.944-945), including the assertion that the Board's efforts to find an alternative provider to handle the refugee services contract violated the First Amendment. In order to avoid an overly broad misconstruction of any declaratory judgment, this Court would properly grant the ICBC declaratory relief as to the claims on which it prevailed. But SVCC's formulation ignores the fact it has prevailed on claims related solely to the 2020 Community Agency Grant Application, because it hopes to enjoy the benefit of a one-sided declaratory decree, to which it is no more entitled than ICBC is entitled to a declaratory judgment addressing only refugee services contract issues.

First Amendment right of ICBC Commissioners to express their views on any subject and on any persons with whom Ingham County has contractual or other relations within the proper purview of the Board of Commissioners, would be a fair and balanced remedy.  A declaratory ruling that addresses only part of the controversy, the narrow part on which SVCC has prevailed, would stifle the right of ICBC members to express their views, whether in official or individual capacities, on any subject consistently with the First Amendment.  *Bond v. Floyd*, 385 U.S. 116, 135-36; 87 S.Ct. 339, 349; 17 L.Ed.2d 235 (1966) ("The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy"); accord: *Zilich v. Longo*, 34 F.3d 359, 363-364 (6th Cir. 1994).

b.  With equal neutrality where each party has prevailed in part, simply refuse declaratory relief.

c.  In a final judgment awarding compensatory and nominal damages, summarize the various substantive rulings (ECF Nos. 36 and 74), so anyone examining the outcome can better understand what happened and why the Court ruled as it did.

One-sided declaratory relief would be counter-contextual, unfair, and serve no *proper* useful function.

**Issue III:  Permanent injunctive relief would be singularly inappropriate.**

SVCC seeks a permanent injunction (ECF No. 75-3, PageID.2155-2156) in the following terms:

The Ingham County Board of Commissioners, its members, agents, employees, and those it acts in concert with are ENJOINED:

(a) from terminating, suspending, failing to renew, or impairing the Board's contracts, funding, or grants with St. Vincent, if such suspension, termination, failure, or impairment stems from the Board's discrimination or retaliation against

St. Vincent's exercise of its First Amendment rights; and (b) to adopt an official statement of the reasons why it terminated, failed to renew, or chose not to award a grant, contract, or other funding to St. Vincent, should the Board choose to do so for any reason during the term of this injunction.

In accordance with Federal Rule of Civil Procedure 60(b), the Board may seek to dissolve this injunction by adopting new processes or procedural safeguards to ensure that future decisions will be made without unconstitutional discrimination or retaliation. The Court will entertain a motion for dissolution at such time as the Board presents evidence of new processes or rules that are likely to prevent future violations of constitutional rights. This permanent injunction shall take effect immediately.

Turning now to the proposed terms of SVCC's requested injunction, the first section would prohibit ICBC "(a) from terminating, suspending, failing to renew, or impairing the ICBC's contracts, funding, or grants with St. Vincent, if such suspension, termination, failure, or impairment stems from the ICBC's discrimination or retaliation against St. Vincent's exercise of its First Amendment rights."

SVCC offers two threshold contentions (ECF No. 75, PageID.2126-2127): (1) "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[8]." *Elrod v. Burns*, 427 U.S. 347, 373 (1976)[9], and (2) "a permanent injunction is the 'well-settled' remedy for violating constitutional rights with continued irreparable harm.", citing *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 616 (6th Cir. 2006)[10]. Even accepting both propositions, where is the "*continuing* irreparable harm"? There was no other violation of

---

[8] The notion that SVCC's injuries are "irreparable" so that money damages alone can never suffice to redress them is contradicted by the fact that SVCC's Complaint contains 5 Counts, each of which was expressly predicated on 42 U.S.C. §1983. (ECF No. 1, PageID.27-32.) "[T]he basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. at 307. So, the basic concept is that monetary damages recompense the injury; any further remedy is thus extraordinary.

[9] This was merely a plurality opinion and thus not a binding precedent.
[10] SVCC's misrepresentation of the holding of this case was exposed in detail in ECF No. 72, PageID.1962.

SVCC's rights (First Amendment or otherwise) by ICBC before denial of the 2020 Community Agency Grant Application, and there is no claim by SVCC of any subsequent violation. As has been repeatedly demonstrated herein, the offending action was a one-time occurrence limited in scope to a $4,500 Grant Application. The absence of *continuing* misconduct therefore, precludes injunctive relief. *Cotton v. Mansour*, 863 F.2d 1241, 1248 (6th Cir. 1988).

It must be noted that, after months of berating ICBC for ill treatment of SVCC due to SVCC's involvement in *Buck v. Gordon* (W.D. Mich. No. 1:19-cv-286)—a prior lawsuit in which *no Ingham County Agency or agent was involved*, but which was given a separate section in this Court's March 7, 2022, Summary Judgment Ruling (ECF No. 74, PageID.2083) and served as the main basis for this Court's findings of retaliation (*id.*, PageID.2097-2101)— SVCC's Remedy Brief mentions *Buck* only in a footnote (ECF No. 75, PageID.2122), and only in connection with money damages. This *volte face* might seem remarkable, until one examines the final judgment in *Buck* (***Exhibit 1***), where neither declaratory nor injunctive relief was awarded, so SVCC's sudden disinterest in *Buck*'s details is thus revealing. SVCC proffers no justification for subjecting ICBC to much more onerous penalties, based on anti-*Buck* comments by a small minority of commissioners, as compared to the actual remedies in *Buck* itself.

SVCC admits that "courts sitting in equity are not to supplant government decisions about how taxpayer money is spent", citing ECF No. 74, PageID.2102, where this Court held:

> A court needs to be cautious when enjoining a public entity from making particular decisions on how to spend taxpayer money. See *Brown v. Neeb*, 523 F. Supp. 1, 3 (N.D. Ohio 1980), aff'd, 644 F.2d 551 (6th Cir. 1981) ("Obviously, neither practically nor in law does this Court have the jurisdiction or the power to order the City, or its officers, to increase taxes, or to spend its money in particular ways. The Court cannot determine the priorities that the City Council, or the City Manager, should establish for various activities.") A court may enjoin an entity to prevent it from making discriminatory decisions, but it cannot dictate how an entity should prioritize its spending. *Id*.

SVCC claims that its proposed language satisfies these limitations but note that the language selected does not enjoin ICBC from discriminating and/or retaliating on some First Amendment basis. SVCC chose to craft its proposal to bar the ICBC from making just such prioritization decisions about expenditures from a public fisc IF such action is the product of discrimination or retaliation. Again, SVCC goes out of its way to craft language that is designed to chill future Boards of Commissioners, *Bounds v. Smith, supra*, from, say, discontinuing funding of the Community Agency Grant program, lest SVCC claim that such an apparently legitimate policy decision was actually a subterfuge for discrimination or retaliation against SVCC. As Ingham County revenues inevitably rise and fall, an injunction which inhibits the ICBC from prioritizing spending to meet ever changing circumstances for fear SVCC will allege discriminatory or retaliatory motives means SVCC will forever have an advantage over all other entities and person, including those of different religions and the non-religious, because programs that involve SVCC receiving funding will be insulated, to a greater or lesser degree, from being subjected to the prioritization sieve that all other programs must face. So, even if SVCC could overcome the lack of continuing harm as a barrier to injunctive relief, ironically, its proposed remedy would cause more harm, and violate more First Amendment rights, than it might cure.

The second part of SVCC's proposed permanent injunction would require ICBC "(b) to adopt an official statement of the reasons why it terminated, failed to renew, or chose not to award a grant, contract, or other funding to St. Vincent, should the ICBC choose to do so for any reason during the term of this injunction", *i.e.*, forever.

In support of this extraordinary remedy, SVCC cites a case requiring a municipality to provide notice of its intent to release protected private information, having publicized such sensitive data previously. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998).

But, SVCC's language has no relationship to notice, which was never an issue in this case. SVCC wants this Court to require the ICBC, on pain of contempt, to agree on a reason, or list of reasons, for any future decision not to fully fund any SVCC request for an appropriation. In other words, there is no basis in the record for deeming such a requirement adapted to fix the constitutional violation that actually occurred.

Another obvious flaw in this request—other than the blatant violation of ICBC's (and each Commissioner's) First Amendment right not to speak[11]—is that this "remedy" would accomplish exactly *nothing*. We know this for a certainty because a facially valid reason *was* given for the ICBC's decision not to approve SVCC's 2020 Community Agency Grant request (ECF No. 74, PageID.2094), which this Court has rejected as not credible (*id.*, PageID.2094-

---

[11] As summarized in *Parate v. Isibor*, 868 F.2d 821, 828 (6th Cir. 1989):

> In the context of protected speech, the difference between compelled speech and compelled silence "is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say." *Riley v. National Fed'n. of the Blind of N.C.*, 487 U.S. 781, 796-797, 108 S.Ct. 2667 2677, 101 L.Ed.2d 669 (1988) (invalidating a statute that required professional fund raisers to disclose administrative fees charged charities because the statute unconstitutionally compelled speech); *Keyishian v. Board of Regents*, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967) (striking down loyalty oaths as a precondition to public employment on First Amendment grounds); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 256, 94 S.Ct. 2831 2839, 41 L.Ed.2d 730 (1974) (invalidating state statute that compelled a newspaper to print an editorial reply, and thus, exacted "a penalty on the basis of the content of [the] newspaper"); *Board of Educ. v. Barnette,* 319 U.S. 624, 642, 63 S.Ct. 1178 1187, 87 L.Ed. 1628 (1943) (invalidating mandatory educational requirement that the pledge of allegiance be recited). * * *

> In *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the Supreme Court held that an individual could not be compelled to display the slogan "Live Free or Die" on his automobile license plate. In so holding, the Court relied on the principle that "[t]he right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.' " *Id.* at 714, 97 S.Ct. at 1435 (quoting *Barnette*, 319 U.S. at 637, 63 S.Ct. at 1185).

2096, 2098-2100).  So, requiring the ICBC to provide a reason would be pointless; lack of a reason was not merely unimportant to the adjudication constitutional violation, the determination that the stated reason was untrue was relied on to establish the violation.

Importantly, it is settled law that the 14 ICBC Commissioners may have 14 different reasons for voting on a pending matter (indeed, each Commissioner might have multiple reasons).  "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."  *United States v. O'Brien*, 391 U.S. 367, 684 (1968).

Turning attention to the proposed final paragraph, SVCC's formulation would "permit" the ICBC to proceed under Fed. R. Civ. P. 60(b) to seek modification of the permanent injunction if specified conditions are satisfied.  Respectfully, the ICBC does not need anyone's permission to file a motion for relief from judgment under Rule 60(b); by including such language in an injunctive order, the Court would appear to require that ICBC needs such advance judicial permission[12] to avail itself of this pre-existing procedural avenue for relief from judgment.

---

[12] SVCC cites *Déjà Vu of Nashville v. Nashville*, 274 F.3d 377 (6th Cir. 2001), which it summarizes as follows:

> There, the Sixth Circuit directed that an injunction remain in place until a city was able to remedy unconstitutional portions of a law: "Upon remand, the district court should maintain the injunction until Metropolitan Nashville satisfies it that the constitutional problems with the Ordinance's definition of 'sexually oriented' and its judicial review procedures have been corrected." *Id*. at 403.

*Déjà Vu* has no conceivable relevance here—ICBC did not adopt an unconstitutional ordinance, enforcement of which would properly be prohibited pending passage of a corrected version that passes constitutional muster.  Alternatively, the case supports ICBC's position—SVCC can be awarded its $4,500 grant, conditioned on using the funds for the originally indicated purpose or some other purpose approved by the ICBC, making an injunction wholly unnecessary, as appropriation of the funds cures the constitutional infringement.

Even more egregious, SVCC's proposed language limits the grounds on which ICBC might invoke Rule 60(b) in terms so vague no one will ever know, until after the fact, if the specified conditions have been satisfied or not. Presumably, ICBC would be subject to citation for contempt of court should it interpret "new processes[13] or procedural safeguards" in a manner that SVCC or this Court (including a successor judge) later deems inadequate to satisfy whatever was intended. As the 6th Circuit recognized in *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 798 (6th Cir. 2017):

> The contempt power ensures that the judiciary's mandates are authoritative rather than advisory. But an imperious judiciary is just as problematic as a powerless one. So the contempt power is limited: A party cannot be held in contempt unless it has violated a definite and specific court order.

A party seeking contempt sanctions must demonstrate, by clear and convincing evidence, that the opposing party knowingly "violated a definite and specific order of the court." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (quotation and brackets omitted). The "definite and specific" requirement guards against arbitrary exercises of the contempt power. Contempt cannot be based on "a decree too vague to be understood," but is instead reserved for those who "fully understand[]" the meaning of a court order and yet "choose to ignore its mandate." *Int'l Longshoreman's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).

---

[13] What does "process" even mean in this context—ICBC is not an administrative agency, it is a legislative body. Suppose the Board, on reflection, concludes that the involvement of its Comptroller in reviewing community agency grant program applications is both unhelpful and risky, and so should no longer occur—that seems to be a change in "process" which, with the adoption of some vague anti-discrimination fillip, arguably fulfills the prerequisites for a permissible Rule 60(b) motion. SVCC would probably be outraged, and ICBC would then be at risk of being found in contempt for merely filing a motion. Instead of reliance on Rule 11 to prevent frivolous motions, the awesome power of contempt would become the first line of defense, which is antithetical to appropriate litigation practice.

Thus, if SVCC's language were adopted, *unlike all other litigants*, ICBC would be under threat of contempt merely for exercising its right to file a Rule 60(b) motion on whatever grounds it might consider appropriate, being subject to Rule 11 sanctions if it should abuse that right. SVCC would supplant Rule 11's sword of Damocles (sanctions involving costs and attorney fees) by making the contempt power the sanction of *first* resort, contrary to the fundamental precept that contempt is a measure of *last* resort. *Young v. United States*, 481 U.S. 787, 801 (1987).

It is no answer to say that SVCC would not "unreasonably" allege ICBC were in violation of the decree, or that this Court would construe any ambiguity in favor of ICBC in adjudicating a charge of contempt. *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996). Even if acquitted in the end, ICBC would suffer significant damage merely by being charged with contempt, and meanwhile it would be chilled from exercising its fundamental First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-822 (1977). Again, the cure for one-time infringement of SVCC's First Amendment rights cannot involve permanent violation of ICBC's First Amendment rights.

The final paragraph thus represents a "remedy" even more (or, if there are no degrees of unconstitutionality, at least as) unconstitutional than the conduct at issue, and ought not commend itself to this Court.

## RELIEF REQUESTED

SVCC is entitled to compensatory and nominal damages, but the evidence supports only an award of $120, plus the original 2020 $4,500 Grant *conditioned* on SVCC using the funds for the program described in its 2020 Community Agency Grant Application, or another program approved by ICBC. Declaratory and permanent injunctive relief are wholly unjustified by the

facts. The broad injunctive relief demanded by SVCC would violate the First Amendment rights of ICBC and each of its Commissioners, destroy Ingham County's constitutionally-protected Republican-form of government, U.S. Const., Art. IV, cl. 4, and involve this Court micromanaging all future budgetary activity of the ICBC in a manner antithetical to common sense and the Tenth Amendment[14] alike.

Respectfully submitted,

Dated: April 28, 2022      By:   /s/ Bonnie G. Toskey        
                Bonnie G. Toskey (P30601)
                Sarah K. Osburn (P55539)
                Cohl, Stoker & Toskey, P.C.
                Attorneys for Defendant
                601 N. Capitol Avenue
                Lansing, MI 48933
                (517) 372-9000
                btoskey@cstmlaw.com
                sosburn@cstmlaw.com

---

[14] See *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022).

**CERTIFICATE OF COMPLIANCE**

Bonnie G. Toskey (P30601) certifies, under L.Civ.R. 7.2(b)(i), that this Brief contains 6,900 words, inclusive of headings, footnotes, citations and quotations, as counted by Microsoft 365 Word, the word processing software used to create this Brief.

Dated: April 28, 2022                                   By: /s/ Bonnie G. Toskey
                                                                    Bonnie G. Toskey (P30601)

N:\Client\Ingham\Litigation\St Vincent Catholic Charities\Pleadings\Response to Claimed Remedies\ICBC Brief in opposition to SVCC's claimed remedies - Final.doc