# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

ST. VINCENT CATHOLIC CHARITIES,

     *Plaintiff,*

v.

INGHAM COUNTY BOARD OF COMMISSIONERS,

     *Defendant.*

No. 1:19-CV-1050

Hon. Robert J. Jonker

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INTEREST**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................iii

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

    I.  St. Vincent is entitled to attorneys' fees. ..................................2

    II. St. Vincent's attorneys' fees are reasonable....................................2

        A. Counsel's hours are reasonable...........................................3

            1.  Total hours ...............................................................3

            2.  Billing judgment.......................................................7

        B. Counsel's hourly rates are reasonable....................................9

            1.  Home rates .............................................................10

            2.  Michigan Bar Journal rates.......................................15

        C. The lodestar amount is reasonable. ......................................18

    III.  St. Vincent's expenses are reasonable. .....................................18

    IV.  St. Vincent is entitled to interest. ............................................18

CONCLUSION ....................................................................................19

CERTIFICATE OF COMPLIANCE .......................................................21

EXHIBITS

Exhibit 1: Haun Declaration

    Exhibit 1-A: Summary of Fees

    Exhibit 1-B: Summary of Requested Expenses

    Exhibit 1-C: Contemporaneous Billing Records

    Exhibit 1-D: Billing Judgment Deletions

    Exhibit 1-E: Haun Resume

    Exhibit 1-F: Windham Resume

    Exhibit 1-G: Reaves Resume

    Exhibit 1-H: Coate Resume

    Exhibit 1-I: Seidleck Resume

    Exhibit 1-J: Osborne Resume

Exhibit 2: Muth Declaration

Exhibit 2-A: State Bar of Michigan's 2023 Economics of Law Practice Survey

Exhibit 3: Bursch Declaration

Exhibit 4: Schaerr Declaration

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adcock-Ladd v. Secretary of Treasury,*
227 F.3d 343 (6th Cir. 2000)..............................................................3, 9

*BLinC v. University of Iowa,*
No. 17-cv-80 (S.D. Iowa, Nov. 10, 2021).............................................15

*Blum v. Stenson,*
465 U.S. 886 (1984)..........................................................................18

*Bronco's Ent., Ltd. v. Charter Twp. of Van Buren,*
214 F. Appx. 572 (6th Cir. 2007) ..........................................................4

*Buck v. Gordon,*
429 F. Supp. 3d 447 (W.D. Mich. 2019) .............................................10

*City of Burlington v. Dague,*
505 U.S. 557 (1992)..........................................................................18

*City of Riverside v. Rivera,*
477 U.S. 561 (1986)......................................................................4, 6-7

*Communities for Equity v. Michigan High Sch.*
*Athletic Ass'n,* No. 1:98-cv-479, 2008 WL 906031
(W.D. Mich. Mar. 31, 2008) ...............................................5, 6, 9, 10, 11

*EEOC v. Wilson Metal Casket Co.,*
24 F.3d 836 (6th Cir. 1994).................................................................19

*Ford v. Uniroyal Pension Plan,*
154 F.3d 613 (6th Cir. 1998) ...............................................................19

*Franciscan Alliance, Inc. v. Becerra,*
No. 16-cv-108, 2023 WL 4462049
(N.D. Tex. July 11, 2023).................................................................14, 15

*Fulton v. City of Philadelphia,*
141 S. Ct. 1868 (2021)....................................................................12-13

*Gonter v. Hunt Valve Co.*,
    510 F.3d 610 (6th Cir. 2007)..................................................................9

*Green Party of Tenn. v. Hargett*,
    767 F.3d 533 (6th Cir. 2014)..................................................................2

*Hadix v. Johnson*,
    65 F.3d 532 (6th Cir. 1995).......................................................9, 10, 11

*Huizinga v. Genzink Steel Supply & Welding Co.*,
    984 F. Supp. 2d 741 (W.D. Mich. 2013) .............................................10

*Imwalle v. Reliance Med. Prods., Inc.*,
    515 F.3d 531 (6th Cir. 2008)...............................................................3, 4

*InterVarsity Christian Fellowship v. Univ. of Iowa*,
    No. 18-cv-80 (S.D. Iowa Nov. 18, 2021)...............................................15

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974).................................................................3

*Lentz v. City of Cleveland*,
    No. 1:04-cv-669, 2011 WL 5360141
    (N.D. Ohio Nov. 7, 2011)......................................................................8

*Linneman v. Vita-Mix Corp.*,
    970 F.3d 621 (6th Cir. 2020)...............................................................16

*Louisville Black Police Officers Org. v. City of Louisville*,
    700 F.2d 268 (6th Cir. 1983)............................................................9, 10

*Miller v. Davis*,
    267 F. Supp. 3d 961 (E.D. Ky. 2017)...................................................18

*Morrison v. Davis*,
    88 F. Supp. 2d 799 (S.D. Ohio 2000) ...................................................9

*Mys v. Michigan Dep't of State Police*,
    No. 1:10-cv-794, 2017 WL 11681361
    (W.D. Mich. Mar. 21, 2017) ...............................................................17

*Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*,
    590 Fed. App. 597 (6th Cir. 2014) ....................................................... 9

*Phelan v. Bell*,
    8 F.3d 369 (6th Cir. 1993)............................................................... 3, 4

*Planned Parenthood Sw. Ohio Region v. Dewine*,
    931 F.3d 530, 544 (6th Cir. 2019) (upho ............................................ 8

*Sigley v. Kuhn*,
    Nos. 98-3977, 99-3531, 2000 WL 145187
    (6th Cir. 2000) ............................................................................ 10

*The Ne. Ohio Coal. for the Homeless v. Husted*,
    831 F.3d 686 (6th Cir. 2016) ................................................. 4-5, 7, 8

*Thompson v. E-State Legal Holdings*,
    No. 1:18-cv-877, 2019 WL 13297235
    (W.D. Mich. Feb. 15, 2019) ...................................................... 2-3

*Trustees of Detroit Carpenters Fringe Benefit Funds v.*
    *Andrus Acoustical, Inc.*,
    No. 11-cv-14656, 2018 WL 3524692
    (E.D. Mich. July 23, 2018) ........................................................ 8-9

*Waldo v. Consumers Energy Co.*,
    726 F.3d 802 (6th Cir. 2013) ........................................................ 14

*Watkins v. County of Genesee*,
    2018 WL 4005781 (E.D. Mich. Aug. 22, 2018) ................................. 19

## Statutes

28 U.S.C. § 1961.......................................................................18-19

42 U.S.C. § 1988............................................................................ 2

## Other Authorities

*2023 Economics of Law Survey Results*,
    State Bar of Michigan ..........................................................15-16

*Compound Interest Calculator*, Investor.gov ......................................... 19

# INTRODUCTION

St. Vincent Catholic Charities ("St. Vincent") is entitled to attorneys' fees, expenses, and interest.

St. Vincent brought this lawsuit because the Ingham County Board of Commissioners ("the Board") discriminated and retaliated against St. Vincent's religious beliefs. Not only did the Board zero out St. Vincent's $4,500 Community Agency Grant in FY2020, it also threatened to cut off $128,000 in annual funding for refugee services—despite one Board commissioner's admission that St. Vincent is the "best game in town" for serving refugees. St. Vincent warned the Board that it was breaking the law. But the Board persisted, litigating tenaciously. St. Vincent prevailed, and the Court awarded the "predicate for all the relief St. Vincent could conceivably seek[.]."

St. Vincent's attorneys expended **2,516** hours to win this case and it seeks fees, expenses, and interest. But St. Vincent is seeking fees for only **1,890.6** hours, based on billing judgment. Those hours are documented in the exhibits and fully justified.

St. Vincent's attorneys are entitled to fees at their customary rate. Due to the controversial nature of the case, the cutting-edge legal issues, the connection with *Buck v. Gordon*, and the limited potential for damages, out-of-market specialists were needed. Becket's rates are below the DC-area market for attorneys of comparable experience. Even if this Court were to conclude that St. Vincent should have hired a local lawyer, Becket

1

would still be entitled to rates comparable to top Michigan firms. Either counsel's customary rates or the 95th percentile of the 2023 Michigan Bar Journal rates would be reasonable, as attested to in declarations from a prominent partner at a major Grand Rapids law firm, a veteran U.S. Supreme Court advocate in DC, and the former Michigan Solicitor General. The Court should grant St. Vincent's requested award.

## ARGUMENT

As this Court said, St. Vincent "may recover interest and attorney fees as allowed by law." Doc. 78. Under 42 U.S.C. § 1988(b), St. Vincent is the prevailing party and is therefore entitled to recover "reasonable attorneys' fee[s]." *Id.*

## I. St. Vincent is entitled to attorneys' fees.

St. Vincent is the prevailing party. A "prevailing party" under Section 1988 "must have received at least some relief on the merits of his claim' amounting to a court-ordered change in the legal relationship between the plaintiff and the defendant." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (cleaned up). St. Vincent prevailed on its Free Exercise and First Amendment retaliation claims at summary judgment and obtained compensatory damages. Docs. 74, 78. Accordingly, St. Vincent is entitled to attorneys' fees. Doc. 78.

## II. St. Vincent's attorneys' fees are reasonable.

"Determination of reasonable attorneys' fees begins with the calculation of the so-called 'lodestar,' which is the product of 'a reasonable hourly

rate' and the 'number of hours reasonably expended on the litigation.'" *Thompson v. E-State Legal Holdings*, No. 1:18-cv-877, 2019 WL 13297235, at *1 (W.D. Mich. Feb. 15, 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The court may also use the *Johnson* factors to ensure the lodestar "reflect[s] relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (stating that the relevant factors "include the twelve listed in" *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Here, lodestar incorporates those factors.

### A. Counsel's hours are reasonable.

To calculate the lodestar, courts determine whether the total number of hours claimed is reasonable and whether specific hours claimed are reasonably expended. *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993). Contemporaneous billing records are acceptable documentation. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553-54 (6th Cir. 2008).

#### 1. Total hours

St. Vincent spent **2,516** hours litigating this case. Ex. 1-A. St. Vincent's total hours are reasonable because, as this Court said, St. Vincent achieved the "predicate for all the relief St. Vincent could conceivably seek in the case[.]" Doc. 74, PageID.2103.

St. Vincent received both compensatory relief and an end to the discriminatory conduct necessitating this lawsuit. "[T]he Court's summary judgment order clearly states that the Board violated St. Vincent's rights

when it denied its Community Agency Grant Application." Doc. 77, PageID.2209. As this Court explained, the summary judgment order is part of St. Vincent's "remedy"—along with the amount of its lost grant ($4,500) and other damages ($300). *Id.* at PageID.2206, 2209. The Court also noted that after more than three-and-a-half years of hard-fought litigation, "the Board has 'learned a lesson.'" *Id.* at PageID.2211 (citations omitted).

These are excellent results, as St. Vincent "obtained an enforceable alteration in [its] legal relationship with the [Board]." *Bronco's Ent., Ltd. v. Charter Twp. of Van Buren*, 214 F. Appx. 572, 576 (6th Cir. 2007). This remains true even though St. Vincent did not "obtain[] all of the changes that [it] sought." *Id.* Excellent results are not measured by "comparing the total number of issues in the case with those actually prevailed upon." *Phelan*, 8 F.3d at 374. Rather, "[w]hen claims are based on a common core of facts or are based on related legal theories . . . they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Imwalle*, 515 F.3d at 554; *see also id.* at 554-55. Nor does the amount of awarded damages bear on the fee award. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("reject[ing] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers"). "Where a plaintiff has obtained excellent results, his attorney should recover a

fully compensatory fee." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (cleaned up).

Consider where the parties started. When this lawsuit began in December 2019, St. Vincent's entire refugee services ministry was in the Board's crosshairs. The Board sought to end its relationship with St. Vincent over the ministry's "publicly stated stances" on marriage "and [its] lawsuit against the state of Michigan toward same sex couples." Doc. 59-1, PageID.1473-1474 (quoting Commissioner Sebolt); *see also* Ex. 1 (Haun Decl.) ¶¶ 42-52 (public disparagement).

The retaliation was swift. *Id.* ¶¶ 42-43 (recounting sequence of events between November 4, 2019 and November 26, 2019). Over the next several weeks, the Board zeroed out St. Vincent's grant, denied the existence of another contract, and conditioned renewal of St. Vincent's largest refugee services contract on the ministry "coming around" on its religious beliefs. Doc. 36, PageID.942. In response, St. Vincent sued to prevent irreparable harm to itself and the refugees that depend on it.

The Board "bitterly contest[ed] the case." *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-cv-479, 2008 WL 906031, at *16 (W.D. Mich. Mar. 31, 2008) (cleaned up). As this Court said when largely denying the Board's motion to dismiss, the evidence of the Board's discrimination was "striking" and "unusual"—even at the pleading stage—and the Board's counterarguments were belied by its "own exhibits." Doc. 36, PageID.947 & n.6. Yet, instead of admitting liability, the

Board insulted St. Vincent for bringing this case, Doc. 28-1, PageID.597, 612 (examples), and it forced discovery to determine "the basis for the Board's decision to deny the Grant application," Doc. 36, PageID.949. Throughout discovery, the Board alleged pretextual justifications and sought untimely, irrelevant discovery into St. Vincent. Haun Decl. ¶¶ 48-51. During discovery, St. Vincent needed to gather evidence to debunk the Board's pretext, oppose the Board's discovery demands (including a hearing before Magistrate Judge Green), and brief and argue summary judgment—with double the briefing, thanks to the Board's unsupported cross-motion. Haun Decl. ¶¶ 48-50.

St. Vincent's victory was decisive: "*The only viable reason* for the Board's denial of the grant request on this record is its animosity against St. Vincent for its religious beliefs, not lack of funds or neutral application of the 'basic needs' criterion." Doc. 74, PageID.2094 (emphasis added). St. Vincent's clear victory was the result of its attorneys, who knew how to litigate a cutting-edge issue: the First Amendment's interaction with discretionary government grant and contracting programs. *See* Ex. 2 (Muth Decl.) ¶¶ 13-16; Ex. 3 (Bursch Decl.) ¶ 13; Ex. 4 (Schaerr Decl.) ¶¶ 13-18. Suggesting that "experienced litigators in civil rights suits of this nature" should have taken less time "seems to suggest that great attorneys do not have to work hard. In the Court's experience, the exact opposite is true." *Communities for Equity*, 2008 WL 906031, at *14. The Board cannot choose to "litigate tenaciously and then be heard to

complain about the time necessarily spent by [St. Vincent] in response." *Rivera*, 477 U.S. at 580 n.11.

The hours expended are documented in the contemporaneous billing records in Exhibits 1-C and 1-D.[1] These hours are reasonable given the prolonged, controversial, and complex nature of the litigation. *See* Haun Decl. ¶¶ 45-52; *see also* Schaerr Decl. ¶¶ 13-18; Bursch Decl. ¶¶ 18-20; Muth Decl. ¶¶ 17-19. Nevertheless, in the exercise of billing judgment, counsel has significantly reduced the hours for which it seeks fees—by 24%, requesting fees for only 1,890.6 hours. Haun Decl. ¶¶ 29-35.

### 2. Billing judgment

"[B]illing judgment" requires counsel to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Husted*, 831 F.3d at 702. Here, the elimination of 625.3 hours (24% of total hours) thoroughly demonstrates proper billing judgment.

First, counsel eliminated 325.6 hours (13%) for entries deemed excessive, redundant, administrative, or containing vague block-billing. *See Husted*, 831 F.3d at 705 n.7 ("block billing can be sufficient if the description of the work is adequate") (cleaned up).

Second, counsel cut attorney travel time: 41.9 hours.

---

[1] Redactions in the time entries are to preserve attorney-client privilege, attorney work product, or both.

Third, counsel eliminated the hours spent (189.6) on the court-ordered remedies briefing. *See* Doc. 74, PageID.2103. This time is fully compensable, but out of recognition for the relief St. Vincent requested and did not receive, counsel eliminated these hours.

Fourth, counsel eliminated 66.3 hours of the 156.6 hours (42%) of the total time spent pursuing fees, though that time too is fully compensable. *See Husted*, 831 F.3d at 725 (abrogating *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986)). Counsel cut this time as evidence of its good faith in seeking an amicable resolution on fees, despite the parties' impasse.

Counsel also cut 87.7 hours of paralegal time, all intern time, and all hours of six attorneys who worked marginally on the case. *See* Haun Decl. ¶ 34.[2]

In total, counsel cut 625.3 hours, or 24% of the total. Such reductions prove billing judgment. *See, e.g., Planned Parenthood Sw. Ohio Region v. Dewine,* 931 F.3d 530, 544 (6th Cir. 2019) (upholding court's decision not to further reduce fees where award included "a 20 percent reduction from Planned Parenthood's initial request," which was already "'embedded' in their fee request"); *Trustees of Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc.,* No. 11-cv-14656, 2018 WL 3524692, at *2 (E.D.

---

[2]    Attorneys' fees can include those for attorneys not admitted to practice before this Court. *See Lentz v. City of Cleveland*, No. 1:04-cv-669, 2011 WL 5360141, at *11 (N.D. Ohio Nov. 7, 2011) (citations omitted).

Mich. July 23, 2018) (rejecting defendants' 50% fee cut request and instead imposing a 15% reduction); *Communities for Equity*, 2008 WL 906031, at \*14 (declining to impose more than a 10% cut); *cf. Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 Fed. App. 597, 604 (6th Cir. 2014) (reversing 85% reduction as abuse of discretion, noting that it would "discourag[e] attorneys from representing clients in civil rights actions for fear that their fees will be dramatically reduced by the court"). All hours claimed are reasonably expended.

**B. Counsel's hourly rates are reasonable.**

Congress allows fee-shifting in civil rights cases "to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Morrison v. Davis*, 88 F. Supp. 2d 799, 801-02 (S.D. Ohio 2000). Section 1988 provides compensation sufficient "to attract competent counsel." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). Courts award attorneys' fees based on the "prevailing market rate in the relevant community." *Adcock-Ladd*, 227 F.3d at 350.

The "relevant community" may be the home district of plaintiff's counsel or the district where the case was brought. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Counsel's home rates are appropriate where

9

it was reasonable to hire out-of-town counsel, and the home rates are reasonable based on the attorneys' "degree of skill, experience, and reputation." *Hadix*, 65 F.3d at 535. Home rates are also appropriate when "counsel possesses specialized expertise in the matter." *Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *7 (6th Cir. 2000); *see also Louisville Black Police Officers Org.*, 700 F.2d at 278.

If courts do not award out-of-town rates, they award local rates that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Huizinga v. Genzink Steel Supply & Welding Co.*, 984 F. Supp. 2d 741, 750 (W.D. Mich. 2013).

### 1. **Home rates**

Here, counsel's home rates are warranted because it was reasonable to hire Becket. *Communities for Equity*, 2008 WL 906031, at *7.

First, the Board discriminated and retaliated against St. Vincent because of its success in *Buck*—where Becket was already representing St. Vincent, and in which Becket "obtained the first-ever preliminary injunction protecting a religious foster agency from liability for upholding its religious beliefs regarding marriage in the foster care context." Bursch Decl. ¶ 18; *accord* Schaerr Decl. ¶ 14; Muth Decl. ¶ 15; *see also Buck v. Gordon*, 429 F. Supp. 3d 447 (W.D. Mich. 2019). Thus, Becket was "already knowledgeable of [the] agency's own operations, sensitive to the religious liberty issues involved, and familiar with the County's actions

which led to the filing of this case." Muth Decl. ¶ 16; *accord* Bursch Decl. ¶ 18; Schaerr Decl. ¶ 14.

Second, St. Vincent had no realistic alternative. *Communities for Equity*, 2008 WL 906031, at *4 (awarding out-of-town rates when competent local counsel isn't available); *see also Hadix*, 65 F.3d at 535 (similar). "Becket attorneys possess significant expertise in religious liberty litigation—expertise not widely replicated in the local Michigan legal market." Muth Decl. ¶ 27. Moreover, with "the resources needed to staff, litigate, and win a case like this," St. Vincent would have needed the help of a "large [Michigan] law firm." *Id.* ¶ 18. But it would have been "extraordinarily difficult, if not impossible, to find experienced counsel from a large law firm," "particularly given the case's close connection to hot button social issues, complex constitutional law issues and the comparatively small amount of money at stake." *Id.* ¶ 17. Moreover, "the inability of religious nonprofits to pay such a firm's customary rates" means "a case like this one would likely have to go through [a firm's] *pro bono* approval process," where "a large law firm" would be "highly unlikely" to approve this case. *Id.* ¶¶ 18-19. Accordingly, St. Vincent needed to turn to an out-of-town specialist like Becket. *See* Bursch Decl. ¶ 19; Schaerr Decl. ¶¶ 14-15.

Finally, it was reasonable for St. Vincent to hire Becket because this case raised novel First Amendment questions. Gene Schaerr, a DC-area

attorney with significant experience litigating high-stakes cases—including serving as counsel in over 100 Supreme Court cases—states that Becket is "the best law firm in the nation specialized in religious liberty litigation." Schaerr Decl. ¶ 10; *see also* Haun Decl. ¶¶ 9-14 (recounting Becket's record). Becket's expertise becomes especially important when "the adversary is one's local government, and the hostility enters the public sphere." Bursch Decl. ¶ 20. Both novelty and controversy underlaid this case.

When this case was brought, St. Vincent's claims were in "uncharted territory." When this case was filed (December 2019), the Board could argue for a more deferential Free Exercise Clause standard toward discretionary government grants. Schaerr Decl.¶ 16. Indeed, this was the Board's core defense. *See, e.g.*, Doc. 16, PageID.168-169 (claiming "*Lukumi* is readily distinguishable" as "[t]he Board alone has the legislative discretion to make the final determination as to the amount, if any, of grant funding to award."); Doc. 19, PageID.440 (arguing courts cannot "invade" the Board's "discretionary authority").

While this case was being litigated, the Supreme Court provided crucial guidance in *Fulton v. City of Philadelphia*—a case litigated (and unanimously won) by Becket. *Fulton* held that the Supreme Court has "never suggested that the government may discriminate against religion when acting in its managerial role," and that the neutrality and general applicability inquiries apply "[n]o matter the level of deference" afforded

to a local government's discretionary decisions. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021). These principles proved "instrumental to St. Vincent decisively prevailing in this case." Schaerr Decl. ¶ 15; *see also* Muth Decl. ¶ 13; Bursch Decl. ¶ 13.

Counsel's home rates are:

|  | **2023 DC Rate** |
|---|---|
| Bill Seidleck ('17) | $765/hour |
| Chris Pagliarella ('16) | $765/hour |
| Christopher Mills ('12) | $940/hour |
| Daniel Benson ('15) | $865/hour |
| Daniel Chen ('16) | $765/hour |
| Eric Baxter ('00) | $1300/hour |
| Jacob Coate ('16) | $765/hour |
| James Kim ('20) | $600/hour |
| Joseph Davis ('14) | $865/hour |
| Kayla Toney ('18) | $655/hour |
| Lori Windham ('05) | $1100/hour |
| Mark Rienzi ('00) | $1300/hour |
| Nicholas Reaves ('15) | $865/hour |
| Rich Osborne ('22) | $600/hour |
| Will Haun ('12) | $940/hour |
| William Thompson ('21) | $600/hour |

13

| Paralegals | $240/hour |
|---|---|

The reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013). The Schaerr declaration confirms counsel's rates are reasonable for the DC area and are in fact "lower than the rates my firm and other firms at which I have worked would charge their clients for attorneys of comparable seniority and expertise on a similar matter." Schaerr Decl. ¶ 19; *see also* Muth Decl. ¶¶ 20-21.

Courts can also consider counsel's previous fee awards. *See Waldo*, 726 F.3d at 821-22. Here, Becket has received multiple fee awards with comparable rates:

(1) *Buck*, in which this Court entered a settlement awarding counsel $550,000, even though the case involved no discovery and never proceeded beyond a preliminary injunction. Haun Decl. ¶¶ 54-55 (citation omitted).

(2) *Franciscan Alliance, Inc. v. Becerra*, in which the Northern District of Texas, Wichita Falls Division, awarded counsel's firm over $2.3 million. The court found that a rate of $1,200/hour for a Becket attorney with twenty-two years of experience and a rate of $700/hour for a Becket attorney with six years of experience was reasonable. *Franciscan Alliance, Inc. v. Becerra*, No. 16-cv-108, 2023 WL 4462049, at *8 (N.D. Tex. July 11, 2023). The court explained that these rates were reasonable,

14

even if higher than local rates, because Plaintiffs' counsel "participate[s] in a market requiring more specialized and sophisticated legal services" and "local counsel would be unable or unwilling to litigate this case." *Id.* at 15.

(3) *InterVarsity Christian Fellowship v. University of Iowa* and *Business Leaders in Christ v. University of Iowa*, two cases in which the Southern District of Iowa, Davenport Division, awarded counsel's firm over $1.3 million. The court found that a rate of $914/hour for a Becket Fund attorney with twenty-one years of experience and a rate of $759/hour for a Becket Fund attorney with thirteen years of experience was reasonable. Order at 2 & n.1, 3, *InterVarsity Christian Fellowship v. Univ. of Iowa*, No. 18-cv-80 (S.D. Iowa Nov. 18, 2021), Dkt. 101; Order at 3, *BLinC v. Univ. of Iowa*, No. 17-cv-80, (S.D. Iowa, Nov. 10, 2021), Dkt. 147. The court explained that the rates "are reasonable given the complex nature of the issues in this case and the extensive experience Plaintiff's counsel has in constitutional litigation." *Id.* Because Becket attorneys were awarded these rates in Davenport, Iowa, it follows that comparable rates are warranted here. *See* Muth Decl. ¶ 30.

### 2. Michigan Bar Journal rates

Alternatively, if this Court determines that it was unreasonable for St. Vincent to hire Becket, St. Vincent requests the following rates based on the 95th percentile of the 2023 Michigan Bar Journal rates. *See 2023 Economics of Law Survey Results*, State Bar of Michigan, at 6, Table 4

15

("2023 Attorney Hourly Billing Rates by Years in Practice") https://perma.cc/B2TJ-FPLW. The Journal's 2023 rates are based on "2022 billing rate information," *see id.* at 3, which is the year St. Vincent prevailed on summary judgment. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 631 (6th Cir. 2020) (permitting awards based on current rates). Those rates are:

|  | 2023 Michigan Bar Journal Rate |
|---|---|
| Bill Seidleck ('17) | $575/hour[3] |
| Chris Pagliarella ('16) | $575/hour |
| Christopher Mills ('12) | $585/hour |
| Daniel Benson ('15) | $575/hour |
| Daniel Chen ('16) | $575/hour |
| Eric Baxter ('00) | $600/hour |
| Jacob Coate ('16) | $575/hour |
| James Kim ('20) | $530/hour |
| Joseph Davis ('14) | $575/hour |
| Kayla Toney ('18) | $530/hour |
| Lori Windham ('05) | $600/hour |
| Mark Rienzi ('00) | $600/hour |

---

[3] Table 4 gives lawyers with 6 to 10 years of experience a higher 95th percentile rate (585) than it does for lawyers with 11 to 15 years of experience (575). Counsel has reverse-ordered those rates.

16

| Nicholas Reaves ('15) | $575/hour |
| Rich Osborne ('22) | $350/hour |
| Will Haun ('12) | $585/hour |
| William Thompson ('21) | $350/hour |
| Paralegals[4] | $95/hour |

St. Vincent's counsel "could reasonably command hourly rates at or above the 95th percentile of Grand Rapids attorneys," which is "especially true here given the controversial nature of this case and its novelty at the time of filing." Muth Decl. ¶ 25. Indeed, counsel's rates are much lower than "comparable practitioners" in Michigan who "charge significantly higher rates." *Id.* ¶ 26. As Bursch—the former Solicitor General of Michigan—put it, Becket's "proposed rates are not only reasonable, they are a relative bargain." Bursch Decl. ¶ 22. Bursch's standard billing rate for Michigan commercial clients is $950/hour, which his "Michigan clients regularly pay … without objection." *Id.*

---

[4]  The Michigan Bar Journal rates do not include a rate for paralegals. Counsel assigned $95/hour—less than what this Court has previously held is "an appropriate lodestar rate" "for paralegals with one to five years of experience[.]" *Mys v. Michigan Dep't of State Police*, No. 1:10-cv-794, 2017 WL 11681361, at *3 (W.D. Mich. Mar. 21, 2017) (Jonker, C.J.) ($99/hour).

**C. The lodestar amount is reasonable.**

Based on the hours reasonably expended and counsel's reasonable home rates, the lodestar amount is **$1,628,879**. *See* Ex. 1-A. Alternatively, using the State Bar of Michigan's 2023 Economics of Law Practice rates produces a lodestar amount of **$1,012,223**. *See id.* "The novelty and complexity of the issues [are] fully reflected in the number of billable hours recorded by counsel," and "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Blum v. Stenson*, 465 U.S. 886, 898 (1984). Accordingly, no lodestar adjustment is required. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("'strong presumption' that the lodestar represents the 'reasonable' fee."); *Miller v. Davis*, 267 F. Supp. 3d 961, 1000 (E.D. Ky. 2017) ("There are no 'rare' or 'exceptional' circumstances which support a reduction of the lodestar amount . . . ." (quoting *Adcock-Ladd*, 227 F.3d at 350)).

## III. St. Vincent's expenses are reasonable.

St. Vincent seeks expenses totaling **$9,775.39**. That amount consists of $6,515.20 for depositions and meeting transcripts, $260.96 for printing, $2,618.64 for airfare, $350.59 for lodging, and $30 for ground transportation. These expenses are reasonable.

## IV. St. Vincent is entitled to interest.

St. Vincent is entitled to pre- and post-judgment interest. *See* 28 U.S.C. § 1961(a). That interest runs from the date of judgment and is "computed daily to the date of payment." § 1961(b). The rate is "equal to

the weekly average 1-year constant maturity Treasury yield" "for the calendar week preceding" the judgment date. § 1961(a). Here, judgment was entered on July 21, 2023, and the preceding weekly average is 5.33%. *See* https://perma.cc/39RP-ZVW2.

Second, "in the absence of a statutory provision to the contrary," federal courts should award pre-judgment interest when necessary to make the plaintiff whole. *Watkins v. County of Genesee*, 2018 WL 4005781, at *4 (E.D. Mich. Aug. 22, 2018); *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 841-42 (6th Cir. 1994) (pre-judgement interest "is an element of complete compensation"). Pre-judgment interest runs from the date the complaint was filed to the date judgment was entered and is calculated using the same "statutory postjudgment framework" described above. *Watkins*, 2018 WL 4005781, at *4; *see also Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998) ("federal courts need not incorporate state law as the federal common law rule for the applicable prejudgment interest rate"). Here, using the same 5.33% interest rate, St. Vincent is entitled to **$986.67** in pre-judgment interest.[5]

## CONCLUSION

For the foregoing reasons, the Court should grant St. Vincent's motion for attorneys' fees of **$1,628,879.00** and expenses of **$9,775.39** under counsel's home rates, or fees of **$1,012,223.00** and expenses of **$9,775.39**

---

[5] *Compound Interest Calculator*, Investor.gov, https://perma.cc/2363-3JME.

under Michigan Bar Journal rates. The Court should also award St. Vincent pre-judgment in the amount of **$986.67,** and post-judgment interest.

Dated: October 16, 2023                Respectfully submitted,

<u>/s/ *William J. Haun*</u>
William J. Haun
Mark L. Rienzi
Lori H. Windham
Nicholas R. Reaves
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
whaun@becketlaw.org

William R. Bloomfield (P68515)
Catholic Diocese of Lansing
Lansing, Michigan 48933-1122
wbloomfield@dioceseoflansing.org
(517) 342-2522
whaun@becketlaw.org

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word limit of L. Civ. R. 7.3(b)(i) because, excluding the portions exempted by L. Civ. R. 7.3(b)(i), it contains 4,217 words. The word count was generated using Microsoft Word for Microsoft 365.

/s/ *William J. Haun*
William J. Haun