UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ST. VINCENT CATHOLIC CHARITIES,

        Plaintiff,

v.                                                                          Hon. Robert J. Jonker
                                                                            U.S. District Judge
INGHAM COUNTY BOARD OF
COMMISSIONERS,                                                              Case No. 1:19-cv-1050

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, St. Vincent Catholic Charities (St. Vincent), having obtained a favorable judgment against Defendant (the Board), seeks an award of attorneys' fees, expenses, and interest.   (ECF No. 85).   Specifically, St. Vincent seeks attorneys' fees in the amount of $1,628,879.00 – or alternatively in the amount of $1,012,223.00[1] – expenses in the amount of $9,775.39, and pre-judgment interest in the amount of $986.67.   (ECF No. 85-1, PageID.2263-64).   The Board does not contest St. Vincent's right to an award of fees, but argues that the award should be reduced to $282,868.19. (ECF No. 88, PageID.2454).   The Court referred the motion to the undersigned judicial officer for report and recommendation.   Having considered all the materials submitted by both parties, and for the reasons articulated below, the undersigned

_____

[1] As will be discussed below, St. Vincent's primary request for attorneys' fees is based on hourly rates from the District of Columbia.   St. Vincent's alternative request is based on local hourly rates.

recommends that St. Vincent's motion for fees, expenses, and interest be granted in part, and that St. Vincent be awarded fees in the amount of $1,012,223.00, along with $9,775.39 in expenses, and pre-judgment interest in the amount of $986.67.

<u>**Relevant Facts and Procedural Background**</u>

St. Vincent is a Michigan non-profit corporation, affiliated with the Catholic Diocese of Lansing, Michigan, which provides refugee services programs in Ingham County, Michigan.   (ECF No. 1, PageID.3-4).   It has provided these services for some twenty years through annually renewed contracts with the county.   (*Id.* at PageID.10-11).   St. Vincent also provides foster care and adoption services.   St. Vincent brought suit in *Buck v. Gordon*, Case No. 1:19-cv-0286 (W.D. Mich.), challenging state actions that would have prohibited it from expressing "the traditional Catholic belief that marriage as ordained by God is for one man and one woman."   *Buck v. Gordon*, 429 F. Supp.3d 447, 450 (W.D. Mich. 2019).   On September 26, 2019, the Court issued a preliminary injunction in St. Vincent's favor. *Id.* at 469

On May 28, 2019, the Board passed a resolution that included a provision stating that, with respect to Ingham County's Community Agency Grant Program, priority would be given to those agencies that comply with the County's non-discrimination policies.   (Op. & Order, ECF No. 77, PageID.2199).   Shortly thereafter, the Board denied St. Vincent's application for a $4,500 grant relating to its refugee services, the same application that had previously been approved.   (*Id.* at PageID.2200).   St. Vincent filed the instant action on December 13, 2019, claiming

-2-

that the Board violated its free exercise and free speech rights under the First Amendment; that the Board retaliated against it for expressing its religious beliefs and in asserting its rights in the *Buck v. Gordon* case; and that the Board violated its equal protection rights under the Fourteenth Amendment.   (ECF No. 1).

On March 7, 2022, the Court ruled that the Board violated St. Vincent's rights under the First Amendment by denying its grant application due to its religious beliefs and in retaliation against it for its protected activity in *Buck v. Gordon*.   (ECF No. 74).   The Court noted that its decision "provides a predicate for all the relief St. Vincent could conceivably seek in the case and makes it unnecessary to address Plaintiff's less developed theories of compelled speech (Count I) and Equal Protection (Count V)."   (*Id.* at PageID.2103).   The Court sought additional briefing on potential declaratory, monetary, and injunctive relief.   (*Id.*).

On July 21, 2023, after receiving the supplemental briefing, the Court awarded St. Vincent $4,800 in compensatory damages, but denied its request for declaratory and injunctive relief.   (ECF No. 77, PageID.2212).   The Court held that declaratory relief was unnecessary in light of its previous holding that the Board violated St. Vincent's rights when it denied its grant application, and that permanent injunctive relief was unnecessary due to changes in the makeup of the Board and the recognition from both parties that "the Board has 'learned a lesson.'"   (*Id.* at PageID.2209, 2211). The Court entered judgment in favor of St. Vincent, and noted that St. Vincent "may recover interest and attorney fees as allowed by law."   (Judgment, ECF No. 78).

St. Vincent filed its motion for fees, expenses, and interest on October 16, 2023. (ECF No. 85).   The Board responded on November 13, 2023.   (ECF No. 88).   With permission of the Court, St. Vincent replied on November 22, 2023.   (ECF No. 90, 91).

## Analysis

As the "prevailing party" under 42 U.S.C. § 1988(b), St. Vincent is entitled to recover reasonable attorneys' fees.   The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   This is the "lodestar method" of calculation.   *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).[2]   The party seeking an award of fees bears the burden of proving its request is reasonable.   *See, e.g., Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007).

---

[2] The Sixth Circuit "rel[ies] on precedents involving attorney fees without regard to whether they involved Title VII or some other federal statute."   *Isabel*, 404 F.3d at 415.

-4-

## The Reasonable Hourly Rate

The Court begins this analysis by determining a reasonable hourly rate. "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).   There is a presumption in favor of the community market rates. *See, e.g., Blum*, 465 U.S. at 895 (" '[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community*.'" (quoting *Blum*, 465 U.S. at 895)) (emphasis in *Adcock-Ladd*); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("We . . . apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question.").   The "community market rule" has the "principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand inapplicable[.]' "   *Hadix*, 65 F.3d at 536 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

The presumption in favor of local market rates may be overcome, however, in certain cases to "allow higher rates to be recouped by an 'out-of-town specialist.' " *Communities for Equity v. Michigan High School Athletic Ass'n*, Case No. 1:98-cv-0479, 2008 WL 906031, at *4 (W.D. Mich. March 31, 2008) (citing *Hadix*, 65 F.3d at 536)).   In deciding whether to award out-of-town rates, "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix*, 65 F.3d at 535 (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983)).

Moreover, the Court may adjust the lodestar fee, upward or downward, as it deems it appropriate based on the so-called *Johnson* factors.   *See Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).   But these factors "are not die-hard requirements."   *Communities for Equity*, 2008 WL 906031, at *5.

All of these principles can be summarized in the axiom that courts are to determine a reasonable fee award, based on the facts and circumstances of a given case.   *Cf. Gonter*, 510 F.3d at 616 ("In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.' " (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).   "A reasonable fee is '*adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers*.' "   *Id.* (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) (emphasis in *Gonter*).   The court may

-6-

rely on its own expertise and judgment in making this assessment.   *See Garber v. Shiner Enterprises, Inc.*, No. 1:06-cv-646, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (citing *United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-cv-93, 2007 WL 1601747, *6 (M.D. Fla. June 1, 2007)).

In the instant case, St. Vincent asks the Court to use hourly rates from the District of Columbia (DC) in which the Becket Fund for Religious Liberty (Becket Fund) is located.   (ECF No. 85-1, PageID.2254-59).   The Becket Fund is a nonprofit public interest law firm that specializes in legal issues relating to religious liberty. (Haun Decl. at ¶ 8, ECF No. 85-2, PageID.2267-68).   The DC rates for the Becket Fund attorneys who were involved in this litigation range from $600 to $1,300 per hour.   (*Id.* at PageID.2257-58).

St. Vincent argues that it was reasonable to retain the Becket Fund's services for this case for at least three reasons.   First, the Becket Fund was already representing it in the related *Buck v. Gordon* case, a case involving religious beliefs about marriage, and which played a significant part of the alleged motivation for the retaliation claim.   Second, St. Vincent had no realistic alternative, as it needed a law firm with both particularized expertise and significant resources.   Third, the instant case involved novel issues for which the Becket Fund's expertise was best suited.   (*Id.* at PageID.2254-57).   The DC rates for the Becket Fund attorneys is supported by a declaration from a managing partner in a DC law firm (Schaerr Decl., ECF No. 85-17), as well as fee awards the Becket Fund attorneys have received in other cases (*see* ECF No. 85-1, PageID.2258-59).

The undersigned does not question the reasonableness of St. Vincent's decision to retain the services of the Becket Fund in this case.   But the undersigned finds that the local market rates for lawyers practicing at the top of their game are sufficient to induce capable attorneys to undertake such representation.   *Cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).   In other words, St. Vincent's alternative request to be compensated at the 95th percentile of Grand Rapids attorneys, as contained in the 2023 edition of the State Bar of Michigan's Economics of Law Survey (Michigan Bar Survey), is sufficient and reasonable.   (ECF No. 85-1, PageID.2259-60; *see* ECF No. 85-15 (Michigan Bar Survey).   The Michigan Bar Survey is an acceptable source.   *See Wells v. Corporate Accounts Receivable*, 683 F. Supp.2d 600, 603 (W.D. Mich. 2010) (citing *O'Connor v. Trans Union, LLC*, No. 05-cv-74498, 2008 WL 4910670, *6 (E.D. Mich. Nov. 13, 2008)).   "District courts have relied on the State Bar of Michigan . . . Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice."   *Wells*, 683 F. Supp.2d at 603 (citing *O'Connor*, 2008 WL 4910670, at *5 and *Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 F. App'x. 498, 501-02 (6th Cir. 2006)).

The Board's conclusory assertion that St. Vincent's fee recovery should be based on the "mean rate" in the Michigan Bar Survey (*see* ECF No. 88, PageID.2453) lacks merit.   Having expended a great deal of argument in favor of applying the local community rates (*see id.* at PageID.2247-53), the Board offers nothing to support the application of an "average" hourly rate in a case involving novel and

-8-

complex legal issues, which were litigated by highly experienced specialists in the field of religious liberty.   Of note is the fact that the Michigan Bar Survey indicates that attorneys who regularly handle civil rights cases charge hourly rates higher than those attorneys engaged in general civil litigation.   (*See* ECF No. 85-15, PageID.2400, with *id.* at PageID.2402).

Accordingly, the undersigned recommends that the Court award fees in an amount using the Michigan Bar Survey rates listed in the Becket Fund's chart. (*See* ECF No. 85-3, PageID.2297).   These include hourly rates ranging from $350 to $600.   (*See id.*).   The undersigned also recommends that the Court use the $95 hourly rate for the Becket Fund paralegals.   (*See id.*).

<u>Hours Reasonably Expended</u>

The next inquiry addresses the number of hours claimed.   In order to accept the claimed time expenditure, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."   *United Slate, Tile & Composition Roofers Ass'n, Local 307 v. G. & M. Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).   The party seeking an award of attorneys' fees has the burden of proving the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433; *see Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).

The Becket fund has provided the Court with counsel's declaration as well as detailed billing records indicating that a total of 2,516 hours were expended litigating this case.   (Haun Decl. at ¶ 29, ECF No. 85-2, PageID.2278; Exh. 1-D, ECF No. 85-6, PageID.2337-58).   The Becket Fund has voluntarily reduced the total billable time by 625.3 hours, which represents a 24-percent overall reduction.   This includes a thirteen-percent reduction "for entries deemed excessive, redundant, administrative, or containing vague block-billing," as well as reductions for attorney travel time, the time spent drafting the supplemental remedies brief, some of the time spent trying to negotiate a resolution to the fee issue, and miscellaneous other deductions.   (Haun Decl. at ¶¶ 30-34, PageID.2278-79).   The remaining billable time sought totals 1,890.6 hours (*id.* at ¶ 35, PageID.2279), which is broken down by timekeeper on a summary chart (Exh. 1-A, ECF No. 85-3, PageID.2294).

The undersigned has reviewed the Becket Fund's itemized descriptions of the work performed in this matter.   While it is difficult to make individualized assessments of each entry, the records adequately support the claim for 1,890.6 hours expended.   The billing judgment exercised by the Becket Fund in its voluntary reductions has obviated a number of concerns the undersigned would have otherwise expressed.   In sum, the undersigned finds the work performed and the time expended to be reasonable.

The Board does not challenge St. Vincent's right to recover attorneys' fees, but seeks a substantial reduction of "at least 30%" to the already reduced billable hours. (ECF No. 88, PageID.2447).   The Board argues, in part, that this reduction is

warranted, given the "limited success" St. Vincent achieved in this case and the "modest award of $4,800." (*Id.* at PageID.2441-42, 2447, 2453). The Board misperceives the significance the relief St. Vincent achieved. As is evident from the complaint, St. Vincent's primary interests were in the vindication of their rights to religious liberty and the recognition that the Board violated those rights and retaliated against its exercise of those rights. St. Vincent achieved those goals in the Court's decision of March 7, 2022. (ECF No. 74). The Court noted that that decision "provide[d] a predicate for all the relief St. Vincent could conceivably seek in the case." (*Id.* at PageID.2103). The amount of compensatory damages awarded does not warrant a proportional reduction in the fees requested. *See Hescott v. City of Saginaw*, 757 F.3d 518, 525 (6th Cir. 2014).

The Board also objects to the amount of time sought in the fee petition, asserting that they are "per se not reasonable." (ECF No. 88, PageID.2443). The Board argues that the billable hours are "significantly inflated, redundant and duplicative." (*Id.*). The undersigned has reviewed each of the arguments advanced by the Board (*see id.* at PageID.2443-46), and finds them unpersuasive. The arguments are largely conclusory and fail to provide the Court with sufficient analysis to allow for meaningful review. As such, they are rejected. *Cf. Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). The Board's attempt to use court-imposed limits to the length of its brief to "posit" duplication and inefficiencies in the Becket Fund's billing statements (*see* ECF No. 88, PageID.2446) is a nonstarter.

-11-

Applying the billable hours for the respective attorneys and paralegals to the Michigan Bar Survey's 95th percentile rate for each, results in a total fee award of $1,012,223.00.   (*See* Exh. 1-A, ECF No.2294).

<u>Expenses and Interest</u>

St. Vincent seeks $9775.39 in expenses and $986.67 in pre-judgment interest. The Board does not challenge the expenses sought.   Accordingly, the undersigned recommends that the Court award the full amount of expenses claimed.

The Board does not challenge St. Vincent's right to prejudgment interest, but argues it should be limited to $354.68.   (ECF No. 88, PageID.2455).   The undersigned recommends that St. Vincent be awarded $986.67 in pre-judgment interest.   "[I]n the absence of a statutory provision to the contrary, the award of prejudgment interest is a matter addressed to the discretion of the court."   *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984).   As the Eastern District recognized, the statutory postjudgment framework set forth in 28 U.S.C. § 1961 presents a reasonable basis upon which to assess prejudgment interest.   *Watkins v. Genesee County*, Case No. 13-13678, 2018 WL 4005781, at *4 (E.D. Mich. Aug. 22, 2018).   This is based on the weekly average Treasury yield for the calendar year preceding the date of judgment.   *See id.*   That rate (5.33%) results in a total interest of $986.67.   (*See* Compound Interest Calculator, Investor.gov, https://perma.cc/2363-3JME (last viewed February 8, 2024)).

-12-

## Conclusion

For the foregoing reasons, the undersigned judicial officer recommends that St. Vincent's motion for attorneys' fees, expenses, and interest (ECF No. 85) be granted in part.   Specifically, the undersigned recommends that St. Vincent be awarded $1,012,223.00 in fees, $9775.39 in expenses, and $986.67 in pre-judgment interest.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 13, 2024

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge