UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. VINCENT CATHOLIC CHARITIES,

    Plaintiff,

v.

INGHAM COUNTY BOARD OF
COMMISSIONERS,

    Defendant.
_____/

CASE NO. 1:19-cv-1050

HON. ROBERT J. JONKER

### ORDER APPROVING AND ADOPTING IN PART
### REPORT AND RECOMMENDATION

### INTRODUCTION

This is a religious liberty case that arose in the wake of an earlier hotly contested case regarding foster care services in the State of Michigan. St. Vincent Catholic Charities was a plaintiff in both cases, and lawyers from the Becket Fund for Religious Liberty represented St. Vincent in both cases. The Ingham County Board of Commissioners was not involved in the earlier foster care litigation, but St. Vincent brought this case against the Board for retaliating against St. Vincent on grant and contact awards administered by the Board for refugee resettlement work and related matters. The parties eventually resolved the bulk of the foster care case by settlement and with entry of a stipulated judgment. In the new retaliation case, judgment ultimately entered in favor of St. Vincent and against the Board in the amount of $4,800, representing the amount of a grant the Board had denied St. Vincent. Now before the Court is St. Vincent's request for attorney fees in the amount of $1,628,879 using D.C. attorney rates, or $1,012,223 using Michigan attorney rates. The Board says an award at either level is unreasonably

high considering the stakes and outcome of the case, and overall mismanagement of resources. A Magistrate Judge reviewed the record on the fee issue and recommends that the Court award the $1,012,223 fee request based on Michigan rates. The Board objects and both sides have largely reiterated their original position in response to the Report and Recommendation.

## LEGAL STANDARDS

The legal standard that applies to the Court's review depends upon whether the motion for fees is dispositive. In considering an appeal of a Magistrate Judge's ruling on a nondispositive motion, the Court applies a "clearly erroneous or contrary to law" standard of review. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)); *accord Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 954 (6th Cir. 1985) (citing 28 U.S.C. § 636(b)(1)(a)); *see also* FED. R. CIV. P. 72.2 (District Judge must consider timely objections to nondispositive pretrial orders of magistrate judge and modify or set aside any part of order that is clearly erroneous or contrary to law). A finding is "clearly erroneous" when "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). A *de novo* standard of review applies in considering objections to a Magistrate Judge's determination on a dispositive motion. Under this lens, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). De novo review in such circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court

need not conclusively decide what standard applies because the Court is satisfied under either standard that a seven-figure fee award would be unreasonable in this case.

## GOVERNING LAW

As the Magistrate Judge correctly determined, as the prevailing party, St. Vincent is entitled to recover reasonable attorney's fees under 42 U.S.C. § 1988(b). Attorney's fees must be reasonable and a district court is expressly empowered to decide whether an award of attorney's fees is reasonable. *Blum v. Stenson*, 465 U.S. 886, 902 n.12 (1984).

Determination of reasonable attorney's fees begins with the calculation of the so-called "lodestar," which is the product of "a reasonable hourly rate" and the "number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After determining the lodestar, the court may modify the fee award to take into account other factors including, among others, the results obtained. *Id.* at 434. If the parties are unable to agree upon the amount of a fee, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* The fee should be one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citation omitted). The Court should exclude duplicative and unnecessary hours from the total number of reasonable hours. *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994).

The Sixth Circuit has adopted the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *superseded by statute on other grounds*, for consideration in calculating reasonable attorney's fees. *Paschal v. Flagstar Bank*, 297 F.3d 431 (6th Cir. 2002). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal service properly; (4) the preclusion of

3

other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the lack of desirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.  The Court need not consider all of these factors, and not all of these factors are relevant to each case. *Hensley*, 461 U.S. at 434, n.9.

## DISCUSSION

The Court readily adopts a number of conclusions that the Magistrate Judge made in his Report and Recommendation.  First, neither party objects to the R&R's conclusion that an award of $9,775.39 is reasonable.  Second, neither party objects to the R&R's conclusion that $986.67 in prejudgment interest is appropriate.  Third, even though St. Vincent maintains its request for a fee award at D.C. rates, the Court agrees with the Magistrate Judge that using Michigan rates is more appropriate in this case.  The entire dispute was litigated in Michigan, and there is no doubt in the Court's mind that a fee award at Michigan rates is more than sufficient to attract competent counsel to a case like this.  Moreover, there are, in the Court's view, plenty of Michigan attorneys who could capably have handled a case like this.  Fourth, the Court is satisfied that the Michigan rates proposed for each of the plaintiff's attorneys based on the Michigan survey are reasonable based on their experience, expertise and other qualifications. (*See* ECF No. 85-3, PageID.2294) (summary table).  Finally, as the Magistrate Judge notes, plaintiff voluntarily trimmed its fee request by about 600 hours of time actually spent as a matter of billing judgment, which the Court agrees is entirely warranted.  (ECF No. 92, PageID.2698).  On these issues, the Court adopts the conclusion and reasoning of the Report and Recommendation and overrules any objections to the

4

contrary.

This leaves the Court with a lodestar fee request of $1,012,223 for 1,890.6 hours spent by 0 different named timekeepers, plus unnamed paralegals, at the Michigan rates. In the Court's view, that is an unreasonably high request, all things considered, including the stakes and outcome of the case, as well as the resource management, or lack of management, on the part of plaintiff's counsel. There is no easy way to sculpt to the penny, or even the dollar, how best to account for these factors. But considering all relevant factors, the Court believes that a total fee award of $455,000 is reasonable on this record and more than sufficient to attract competent counsel to a case like this and to compensate plaintiff's counsel for the work performed in achieving the measure of success they did in this case.

The Court begins with looking at what was at issue in the case. Of course, anytime a constitutional right is involved in a case, there are critical values in play that cannot readily be measured in dollars and cents. And there were important constitutional rights at issue in this case. But even so, part of what good lawyers bring to a case, and part of what any Court must assess, is the overall scope and size of the dispute. This is especially important, in the Court's view, when the normal market discipline of a client obligated to pay a law firm's invoices is not in play. In cases where clients and law firms have a normal arm's length relationship, clients can and do work with their counsel to decide when enough is enough. But when a highly qualified and motivated group of lawyers like the Becket Fund is handling a case, that kind of client discipline is not necessarily in play. It is too easy simply to deploy the heavy artillery without critically examining whether small arms fire might be enough.

In this case, for example, the triggering event was the Board's refusal to approve a $4,800 grant application from St. Vincent. The Court readily found that the basis for the Board's refusal

5

was unlawful retaliation based on St. Vincent's religious views as expressed in the earlier foster care case. But the comparatively small amount at issue, even when put in the context of improper motivation and possible spillover to other issues, has to inform the reasonableness of the litigation approach. In this case, plaintiff began with a motion for preliminary injunction that the Court ultimately wound up dismissing as moot because there was no evidence, in the Court's view, to demonstrate that there was any kind of imminent risk at all. But the detailed time records submitted by St. Vincent indicate that over 200 hours of attorney time were devoted to the preliminary injunction motion, suggesting over $100,000 in attorney time at the average hourly rate involved in the fee request. In the Court's view, that is one clear illustration of obvious overkill. To be sure, the work performed, as reflected in the briefing, was first rate legal analysis and writing. It just was, in the Court's view, entirely unnecessary considering what was fairly at issue at the time.

This segues to the Court's second overall consideration: the final outcome in the case. As already noted, the ultimate judgment entered in the case was simply a $4,800 award representing the value of the grant originally denied. The Court does not agree with the Board that this is the only measure of success in the case. Moreover, even if it were the only measure of success, the Court recognizes that there is not, and cannot be, strict proportionality between dollars awarded in a judgment and fees expended to get to that point. But the tangible results of the case are at least a relevant consideration. And, as already noted, the amount of tangible relief that is even possible to request in a case is at least an essential consideration for lawyers and clients in deciding what resources to deploy.

Here, the $4,800 is the only tangible relief ultimately awarded, but in the Court's view, it does represent considerably more than the dollars alone. The basis for that award was the Court's

6

finding on summary judgment that the only reason the Board denied the grant in the first place was its disagreement with St. Vincent's religious beliefs, as expressed in the earlier foster care litigation, and the Court's emphatic conclusion that the Constitution plainly forbids any governmental entity from doling out or withholding grant awards, contract awards or other benefits based on agreement or disagreement with an applicant's religious views.  Particularly considering the public statements made by some of the members of the Board in the grant decision process, this was a critical lesson to make abundantly clear.  St. Vincent and its counsel were understandably keen to establish the point.  And making the point is valuable constitutional relief even if the only tangible measure of it in this case turned out to be $4,800.  Indeed, as the Court found in denying prospective injunctive relief, the record demonstrated to this Court's satisfaction that the Board learned this lesson and acted on that new learning in making other decisions involving St. Vincent that did not retaliate.

But even so, the litigation over remedy in this case demonstrates that St. Vincent was pursuing relief that was entirely unsupported in the record, even on its own successful theory of religious discrimination.  The most obvious example of this was St. Vincent's effort to recover $50,000 in alleged reputational harm.  The Court denied that portion of requested relief based on what it found as a lack of any evidence in the record to support it.  In fact, as St. Vincent itself acknowledged in the early paragraphs of its Complaint, "[t]he Board expressly and repeatedly acknowledged that St. Vincent's refugee programs were excellent." (ECF No. 1, PageID.2).  The record bore that out completely:  even those members of the Board who were most critical of St. Vincent's religious views regarding family matters in the foster care litigation had nothing but good to say about St. Vincent's actual work in the community on refugee programming.  In the Court's view, a claim of reputational damage was never actually a part of the Complaint, was

7

entirely unsupported by the record and should never have been part of the relief St. Vincent sought on the remedy in this case. This illustrates an issue on which St. Vincent plainly did not prevail in the case, even though it won on its principal theory of the case. In assessing the overall reasonableness of a fee award, the Court properly considers not only the issues on which a plaintiff prevails, but also those on which it did not. And here, both sides have issues on which they prevailed and issues on which they did not.

The final key factor in the Court's assessment of reasonableness is the conclusion that the overall management of legal resources by plaintiff and its counsel was less than optimal. Even plaintiff appears to recognize this in voluntarily reducing the total number of hours for which it is seeking recovery. That exercise of billing judgment is welcome and appropriate. But in the Court's view, it does not cut deeply enough on this record. Start with the raw number of timekeepers working on the case: ten named attorneys, all but one of which carried a local Michigan hourly rate of at or near $600. This case did not warrant nine or ten lawyers billing at the very top of their respective fields, based on the Michigan survey. In fact, about 89% of the hours claimed (1,690.5), and about 97% of the dollars claimed ($988,623.50), were logged by timekeepers billing an average hourly rate of $585. In the Court's view, those timekeepers had the training, experience and expertise to command those rates in the Michigan market, but that is not the same thing as saying they were all properly allocated to work on this case. Surely much of that work could capably have been performed by professionals with less experience and lower rates. You don't need a fleet of Maseratis to drive to and from the grocery store.

Putting all of these factors together, the Court is satisfied that a fee award of $455,000 is reasonable and appropriate on this record under applicable law.

8

**CONCLUSION**

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 92) is **APPROVED AND ADOPTED IN PART** as the opinion of the Court to the extent it is consistent with the above Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees (ECF No. 85) is **GRANTED in part.** Plaintiff is entitled to attorney's fees totaling **$455,000.00.**


Dated:   August 23, 2024               /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE